IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CITIZENS COMMUNITY FEDERAL,

                                      OPINION AND ORDER

             Plaintiff,

                                  12-cv-648-bbc

        v.

SILVER, FREEDMAN & TAFF, L.L.P.,
BARRY P. TAFF, P.C., MARTIN L. MEYROWITZ, P.C.
and NANCY M. STILES, P.C.,

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this civil action, plaintiff Citizens Community Federal contends that defendants Silver, Freedman & Taff, L.L.P.; Barry P. Taff, P.C.; Martin L. Meyrowitz, P.C.; and Nancy M. Stiles, P.C. committed legal malpractice and breached their fiduciary duties in drafting employment and benefits contracts for plaintiff and James Cooley, plaintiff's then president and CEO, when they did not make any provision for the forfeiture of Cooley's retirement benefits if he were terminated from his position for cause. Subject matter jurisdiction exists under 28 U.S.C. § 1332 because plaintiff's and defendants' citizenship is diverse and the amount in controversy exceeds $75,000.

Defendants have moved for summary judgment on the ground that this court lacks personal jurisdiction over them, dkt. #36, but that motion will be denied. Defendants waived the defense by waiting too long to act on it, but even if they had not waived it, it

1

would be denied on the merits.  Defendants also ask the court to dismiss defendant Martin L. Meyrowitz, P.C., because they say this defendant was not involved in drafting the contracts in question.  Because plaintiff has not responded to this argument, I will grant this motion.  Plaintiff has filed a cross motion for partial summary judgment and requests that the court rule on the applicable standard of care and on defendants' negligence as part of plaintiff's legal malpractice claim.  Dkt. #44.  Defendants do not dispute the standard of care, so I will grant plaintiff's motion in that respect, but deny it as to the question of defendants' negligence.

From the parties' proposed findings of fact and the record, I find that the following facts are undisputed.


## UNDISPUTED FACTS

Plaintiff is a federally chartered savings association whose charter lists its home office as Eau Claire, Wisconsin.  Beginning in or around March 2001, plaintiff enlisted legal assistance from defendant Silver, Freedman and Taff, L.L.P., a law firm and limited liability partnership with its principal place of business in Washington, D.C.  The firm's partners are 11 professional corporations with citizenship in Washington, D.C.  Three of the partners are the other defendants in this case: Martin L. Meyrowitz, P.C.; Nancy M. Stiles, P.C. and Barry P. Taff, P.C.  During 2001 and 2002, Silver, Freedman and Taff's website described its business as "specializing" in executive compensation, among other things, and described Barry P. Taff as an expert in executive compensation.

Plaintiff sought the defendant firm's legal advice on its transition from a credit union to a mutual savings bank. From March 2001 until June 2009, the firm performed more than $1,000,000 of legal services for plaintiff and plaintiff's parent corporation, including the drafting of an employment contract for plaintiff's then-president and CEO, James Cooley. Nancy M. Stiles (principal of defendant Nancy M. Stiles, P.C.) drafted the contract between March and May 2001. Section 7 of the contract covers termination and provides that all of plaintiff's obligations under that contract would cease if the employee is terminated for cause. The contract does not state that other benefits would also be forfeited in the event of termination for cause. Stiles does not recall discussing termination provisions with plaintiff at any time.

Between June 2002 and August 2002, the defendant firm, and Barry P. Taff, in particular, drafted a supplemental executive retirement plan and directors' retirement plan for plaintiff. Cooley participated in the supplemental executive retirement plan.

The directors' plan contained a "termination for cause" provision, providing that no benefits would be paid under the plain if the director was terminated for cause. However, the supplemental executive retirement plan contained no "termination for cause" provision. In other respects, the supplemental executive retirement plan's provisions contained language similar to that provided in the Office of Thrift Supervision's regulations on employment contracts. (The Office of Thrift Supervision was a federal agency charged with overseeing federal savings associations.)

The only discussion Taff recalls with plaintiff about termination provisions was one

he had with Cooley.  In that discussion, Taff told Cooley he would not use a "termination for cause" provision that divests benefits from employees in the event of termination in either retirement plan under normal circumstances, unless plaintiff desired to do so.  But he advised adopting the termination clause in plaintiff's directors' plan, for "cosmetic" reasons. He did not explain why he did not give the same advice for the provision in the executive plan.

In June 2009, plaintiff asked the defendant firm to inform it whether an employee's retirement benefits under the supplemental executive retirement plan would be affected by termination for cause, as compared to voluntary termination.  The firm responded that under either voluntary or involuntary termination, the result would be the same because, without a termination for cause provision, plaintiff must pay retirement benefits to participants in the supplemental executive retirement plan even if they are terminated for cause.

In September 2009, the board of directors of plaintiff's parent company voted to terminate Cooley for cause.  Cooley asserted that he was entitled to supplemental executive retirement benefits upon reaching retirement age (65).  In July 2012, Cooley reached age 65 and he submitted his claim for retirement benefits.  Plaintiff took the position that it did not have to pay those benefits to Cooley.  Cooley filed a lawsuit against plaintiff, alleging that plaintiff had violated its employment contract with him.  (It is disputed whether and to what extent plaintiff's subsequent settlement of that lawsuit and other agreements with Cooley included settlement of retirement benefits provided under the supplemental executive

4

retirement plan.)

Plaintiff filed this lawsuit on September 7, 2012, and defendants filed an answer on November 13, 2012, raising an affirmative defense of personal jurisdiction. Defendants did not seek dismissal of the suit on this ground until they filed their motion for summary judgment on September 27, 2013. During that year of litigation, defendants filed their joint Rule 26 report with plaintiff, requested interrogatories and documents from plaintiff, provided plaintiff with more than 43,000 pages of documents in discovery, responded to plaintiff's interrogatories, attended plaintiff's four fact depositions and scheduled deposition of plaintiff's expert witness.

OPINION

A.  Subject Matter Jurisdiction

Plaintiff argues that defendants committed legal malpractice and breached their fiduciary duties when they drafted an employee contract and retirement plan for plaintiff's former president and CEO James Cooley that did not provide for the termination of retirement benefits if Cooley was discharged for cause. Because plaintiff's claims arise under state law, subject matter jurisdiction for this case exists under 28 U.S.C. § 1332, which requires complete diversity between plaintiff and defendants and the existence of more than $75,000 in controversy. With respect to the amount in controversy, plaintiff alleges that it is entitled to more than $1,000,000 in damages and defendants do not challenge that estimate. With respect to the parties' citizenship, plaintiff says that, as a federal savings

association, its principal place of business determines its citizenship and its principal place of business is in Wisconsin.  It also says that the defendant firm's partners, including defendants Martin L. Meyrowitz, P.C.; Nancy M. Stiles, P.C. and Barry P. Taff, P.C., are all incorporated and have their principal places of business in Washington, D.C., making all defendants citizens of Washington, D.C.

## B. Personal Jurisdiction

### 1. Waiver

Although parties may object to subject matter jurisdiction at any time, they do not have the same leeway when it comes to personal jurisdiction.  They waive the defense when their conduct might lead the plaintiff to believe that defendants have given up the defense and submitted to jurisdiction, Continental Bank, N.A. v. Meyer, 10 F.3d 1293, 1297 (7th Cir. 1993), or when they allow or encourage the court to expend resources that would go to waste if the case is dismissed.  American Patriot Insurance Agency, Inc. v. Mutual Risk Management, Ltd., 364 F.3d 884, 887-88 (7th Cir. 2004).  Misleading or wasteful conduct may include serious delay in urging the defense of personal jurisdiction or participation in the litigation by participating in discovery, hearings or scheduling.  Blockowicz v. Williams, 630 F.3d 563, 566 (7th Cir. 2010) (defendant waived personal jurisdiction "by participating in the district court proceedings, which included both briefing and oral arguments addressing the merits of the plaintiff's claim."); Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A., 623 F.3d 440, 443 (7th Cir. 2010) ("To waive or

forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking.").

In this case, the litigation has gone on for more than a year.  Defendants waited until the time for filing summary judgment motions to raise their personal jurisdiction defense, a defense they could have raised soon after being served with the complaint.  Defendants have also participated with plaintiff in scheduling conferences and creating a joint pretrial conference report.  Furthermore, defendants have been active in discovery.

Defendants cite <u>American Patriot Insurance Agency</u>, Inc., 364 F.3d at 887-88, a case in which the court of appeals found that the defendant had not waived its venue defense despite its nine-month delay and participation in discovery, but defendants' actions in this case are more egregious.  Defendants' activities have not been those of a party that expects the court to dismiss the case for lack of jurisdiction.  <u>Id.</u> (personal jurisdiction and improper venue "defenses are strictly for the convenience of the defendant; he doesn't have to engage in discovery to know whether the forum chosen by the plaintiff is a convenient one; and so there is no reason to allow him to lie back, wait until the plaintiff has invested resources in preparing for suit in the plaintiff's chosen forum, wait perhaps to assess his prospects in that forum, and only then demand that the case start over elsewhere.").

Defendants say that plaintiff would have had to conduct the same discovery it already has even if defendants had moved for dismissal or summary judgment on personal jurisdiction earlier.  It is difficult to take this argument seriously.  Defendants produced more

than 43,000 documents in response to plaintiff's requests, and plaintiff deposed four of defendants' witnesses, yet defendants' proposed findings of fact on the question of personal jurisdiction are a mere six pages long, with only two pages of supplemental facts from plaintiff.  Defendants did not need to obtain voluminous discovery to determine personal jurisdiction.  Waiting more than a year into litigation, nearing the date of trial, is too late to seek dismissal of the case in reliance on a defense that could have been raised earlier.  Accordingly, I conclude that defendants have waived any defense for lack of personal jurisdiction.

2.  Merits

Even though defendants have waived the defense of personal jurisdiction, I also conclude that plaintiff has made a prima facie case that it exists.  Hyatt International Corp. v. Coco, 302 F.3d 707, 713 (7th Cir. 2002).  In a diversity jurisdiction matter such as this one, a plaintiff must show that (1) the laws of the forum state provide for personal jurisdiction over defendants and the cause of action asserted; and (2) the exercise of personal jurisdiction over the defendant must be constitutionally sound.  Giotis v. Apollo of the Ozarks, Inc., 800 F.2d 660, 664-65 (7th Cir. 1986).

a.  Wisconsin long arm statute

The applicable state law in Wisconsin is its long arm statute, Wis. Stat. § 801.05, which the Wisconsin Supreme Court has determined is to be liberally construed in favor of

the exercise of jurisdiction.  <u>Federated Rural Electric Insurance Corp. v. Inland Power & Light Co.</u>, 18 F.3d 389, 391 (7th Cir. 1994) (citing <u>Schroeder v. Raich</u>, 89 Wis. 2d 588, 593, 278 N.W.2d 871 (1979)).  Depending on defendants' contacts with the forum state, a court may exercise general or specific jurisdiction.  General jurisdiction exists when the defendant is "engaged in substantial and not isolated activities within" the forum state.  Wis. Stat. § 801.05(1)(d).  Specific jurisdiction arises when the issue central to the case arose in the forum state or when an injury is suffered in the forum state and the defendant has solicited business in the state.  Wis. Stat. §§ 801.05(3)-(5).  Defendants say that neither form of jurisdiction is available in this matter; plaintiff argues that both are.

I need not reach the question of general jurisdiction because plaintiff has established a prima facie case that this court has specific jurisdiction over defendants under Wis. Stat. § 801.05(3), which provides for jurisdiction in "any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant."  Plaintiff says that defendants are responsible for an omission in Wisconsin because they failed to warn plaintiff about the risk created by the contracts, thus breaching defendants' fiduciary duties.  In addition, defendants sent communications to Wisconsin in the course of preparing the contracts, which plaintiff says were negligently drafted.

Defendants argue that "receipt of communications within Wisconsin from a remote defendant does not constitute an act or omission within the meaning of Wis. Stat. § 801.05(3)," Dfts.' Br., dkt. #37, at 10, so their acts of communicating by phone, email and mail with plaintiff could not be grounds for personal jurisdiction.  <u>Jefferson Electric, Inc. v.</u>

Torres, 09-C-465, 2009 WL 4884379 (E.D. Wis. Dec. 10, 2009) ("Neither the receipt of communications within Wisconsin from a remote defendant, nor the sending of communications from Wisconsin to a remote defendant, constitute acts or omissions within this state by that defendant."). Defendants' citation to an unpublished decision by a district court is not persuasive, particularly when the Court of Appeals for the Seventh Circuit has reached a contrary decision. In Felland v. Clifton, 682 F.3d 665, 678 (7th Cir. 2012), the court of appeals had "no trouble concluding that Felland ha[d] established a prima facie case for personal jurisdiction under the 'local act or omission' provision" of Wisconsin's long arm statute (§ 801.05(3)) because the "series of alleged misrepresentations [in that case] amounts to a 'local act,'" id. at 679. The court cited a case from the Wisconsin Court of Appeals in which threatening letters from outside the state formed a basis for personal jurisdiction, Stein v. Illinois State Assistance Commission, 194 Wis. 2d 775, 786, 535 N.W.2d 101, 105 (Ct. App. 1995), and concluded that "it is well established that injury through mail or electronic communications satisfies section 801.05(3)." Felland, 682 F.3d at 679.

According to Felland, the central question under § 801.05(3) is whether the communications are part of the tortious acts that form the basis of the litigation. Id. Particularly in complex matters like the contracts at issue here, lawyers' representation of clients necessarily involves more than typing at a distant desk; it includes communications among the lawyers and clients before and during the drafting process, as well as exchanges of information and drafts. In this case, it is undisputed that the parties had such interstate communications in the course of defendants' drafting of the contracts. Furthermore,

10

defendants were drafting contracts for a Wisconsin plaintiff that they knew would be used in Wisconsin as part of plaintiff's business there.  Defendants delivered these contracts to Wisconsin.  They also communicated or, in some instances, failed to communicate with plaintiff about the contracts in Wisconsin.  Communication is therefore central to both claims; this communication occurred in Wisconsin.

Defendants argue that <u>Felland</u> is distinguishable because it involved an intentional tort claim, rather than negligence, but this argument is unpersuasive for two reasons.  First, plaintiff's breach of fiduciary duty claim is an intentional tort claim.  Second, the language used in <u>Felland</u> indicates that the court of appeals did not intend to so limit the rule.  In <u>Felland</u>, the court cited <u>Cote v. Wadel</u>, 796 F.2d 981, 984 (7th Cir. 1986), a case involving a claim of legal malpractice in which a Michigan lawyer and law firm had been hired to investigate a claim involving property located in Michigan and a tortious act occurring there.  It explained that the reason personal jurisdiction did not exist under § 801.05(3) in <u>Cote</u> was because "the handful of interstate communications between the parties were at best only tenuously connected to the conduct underlying the malpractice suit."  <u>Felland</u>, 682 F.3d at 679.  <u>Felland</u> implies that <u>Cote</u> would have been decided differently if, as in this case, the interstate communications were significant and directly tied to an issue central to the case.  It provides no reason to find that personal jurisdiction is not present in this case under § 801.05(3).

b.  Constitutional analysis

Plaintiff must also show that specific jurisdiction in this case would not offend the Constitution's guarantee of due process.  To do this, plaintiff must establish that (1) defendants purposefully availed themselves of the privilege of conducting business in the forum state or purposefully directed their activities toward the state, <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985); (2) plaintiff's alleged injury arose from the activities defendants undertook in the forum, <u>id.</u>; and (3) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice," <u>International Shoe Co. v. State of Washington Office of Unemployment Compensation & Placement</u>, 326 U.S. 310, 316 (1945).

Analyzing the constitutionality of personal jurisdiction is not precisely the same exercise as determining whether the plaintiff has met the requirements of the long arm statute, but the presumption is that satisfying the statute also satisfies the Constitution. <u>Felland</u>, 682 F.3d at 678 ("[C]onstitutional and statutory questions tend to merge; compliance with the Wisconsin long-arm statute creates a presumption that constitutional due process is satisfied."); <u>Kopke v. A. Hartrodt S.R.L.</u>, 2001 WI 99, 245 Wis. 2d 396, 417, 629 N.W.2d 662, 671 ("Compliance with the [long-arm] statute presumes that due process is met, subject to the objecting defendant's opportunity to rebut.").

Defendants attempt to rebut this presumption by arguing that even though their business relationship with plaintiff was regular and long-running, it was not "continuous and systematic" as would be required by the due process clause, and they cite another

12

unpublished decision from a district court, <u>Slinger Manufacturing Co., Inc. v. Nemak, S.A.</u>, 08-C-656, 2008 WL 4425889 (E.D. Wis. Sept. 24, 2008), which refers only to general jurisdiction.  (In <u>Slinger</u>, the court held that the facts allowed for specific jurisdiction under the Constitution.)  Next, defendants say that their sales of services in the forum state are insufficient to establish jurisdiction under the Constitution.  However, the authority defendants cite for this proposition does not actually support their position.  In <u>Genetic Technologies Ltd. v. Interleukin Genetics Inc.</u>, 10-cv-69-bbc, 2010 WL 3122304 (W.D. Wis. Aug. 9, 2010), I stated that *purchasing* items in the forum state is not generally sufficient to establish personal jurisdiction, but that *selling* items in the forum state (which is what these defendants do) is generally sufficient to establish personal jurisdiction.  Finally, defendants say that their website cannot confer jurisdiction.  This assertion is likely correct, but it is not defendants' website alone that establishes personal jurisdiction over them.  Rather, it is their long-running business relationship with a Wisconsin bank that provides the basis for jurisdiction.

This relationship constitutes purposeful availment of the privileges of the forum state, meeting the first requirement under the due process clause.  Defendants engaged in an eight-year relationship with a Wisconsin client during which they billed more than $1,000,000.  <u>Eragen Biosciences, Inc. v. Nucleic Acids Licensing, LLC</u>, 447 F. Supp. 2d 930, 938 (W.D. Wis. 2006) ("Defendant Benner's solicitation, creation and maintenance of an ongoing business relationship with plaintiff, a Wisconsin 'citizen' and his efforts to maintain and increase that business through letters, telephone calls and visits to the state are evidence

13

of his 'purposeful availment' of the privilege of conducting business within Wisconsin.").

See also Langeman Manufacturing, Ltd. v. Pinnacle West Enterprises, 524 F. Supp. 2d 1112,

1119 (W.D. Wis.2007).   As required to establish this first prong, such long-term and

extensive work was "intentional" and "expressly aimed at the forum state" and defendants

were clearly aware that any injury experienced by the plaintiff would be felt in the forum

state.   Tamburo v. Dworkin, 601 F.3d 693, 704 (7th Cir. 2010) (citing Calder v. Jones, 465

U.S. 783 (1984)).   See also Felland, 682 F.3d at 674-75 (citing same).

      Next, as discussed in the section above, the second element is met because plaintiff's

injury arises from defendants' actions in the forum state: their drafting of the contracts and

their communications (or omissions) about the contracts.   GCIU-Employer Retirement Fund

v. Goldfarb Corp., 565 F.3d 1018, 1024 (7th Cir. 2009) ("[P]ast contacts should either bear

on the substantive legal dispute between the parties or relate to the operative facts of the

case.").

      Finally, jurisdiction in this case must not offend "traditional notions of fair play and

substantial justice."   International Shoe Co., 326 U.S. at 316.   "The following factors are

relevant: 'the burden on the defendant, the forum State's interest in adjudicating the

dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate

judicial system's interest in obtaining the most efficient resolution of controversies, and the

shared interest of the several States in furthering fundamental substantive social policies.'"

Tamburo, 601 F.3d at 709 (quoting Burger King, 471 U.S. at 477).   Taking these factors

into consideration, I find it would not be unfair for this court to exercise jurisdiction over

defendants.

Wisconsin surely has an interest in serving as a forum for resident businesses to pursue remedies for injuries inflicted by nonresident actors.  <u>Id.</u>  Plaintiff's interest in obtaining relief is obvious.  The burden on defendants cannot be much greater than any they shouldered during their long distance representation of this client or any greater than that routinely tolerated by courts exercising specific jurisdiction over nonresidents.  <u>Id.</u> Furthermore, defendants have not shown that the exercise of jurisdiction over them would have "an adverse effect on the interstate judicial system's interest in obtaining the efficient resolution of controversies or the shared interest of the states in furthering fundamental substantive social policies."  <u>Id.</u>  Therefore, personal jurisdiction over defendants in this matter comports with due process.


## C.  <u>Legal Malpractice</u>

One of plaintiff's theories for relief against defendants is legal malpractice, which requires showing "(1) the existence of an attorney-client relationship; (2) the acts constituting the attorney's negligence; (3) causation; and (4) damages."  <u>DeThorne v. Bakken</u>, 196 Wis. 2d 713, 717, 539 N.W.2d 695, 697 (Ct. App. 1995) (citations omitted). (Plaintiff argues that Wisconsin law applies to its claims and defendants do not deny that it does, so I will apply Wisconsin law.)  Plaintiff has filed a motion for partial summary judgment, asking the court to rule on two elements of its legal malpractice claim: (1) standard of care and (2) negligence.

15

1.  Standard of care

Plaintiff argues that defendants have held themselves out as "experts" on their website, which stated at the time they represented plaintiff that they were a "Washington D.C. based law firm specializing in securities and venture capital mergers and acquisitions, banking and financial services, *executive compensation*, *benefits* and taxation matters."  Plt.'s Proposed Findings of Fact, dkt. #45, ¶ 10 (emphasis added).  Under Wisconsin law, when a lawyer holds herself out as an expert in a particular area of the law, she is held to a "standard of care consistent with that representation."  Duffey Law Office, S.C. v. Tank Transportation Inc., 194 Wis. 2d 674, 686, 535 N.W.2d 91, 96 (Ct. App. 1995).  Defendants do not deny that they held themselves out as "experts," so I will find that a "specialist" standard of care applies to defendants' conduct in this matter.


2.  Negligence

In a legal malpractice claim, "whether an attorney is negligent requires a showing that the attorney violated a duty of care."  DeThorne, 196 Wis. 2d at 717, 539 N.W.2d at 697.  The duty of care for lawyers, even specialists, is what a reasonable or prudent attorney would have done in the same circumstance, Helmbrecht v. St. Paul Insurance Co., 122 Wis. 2d 94, 112, 362 N.W.2d 118, 128 (1985); Duffey Law Office, S.C., 194 Wis. 2d at 686, 535 N.W.2d at 96.  The problem for plaintiff is that it never articulates this standard duty of care for the situation presented in its claim.

The parties dispute whether expert testimony is required to determine this standard,

16

but plaintiff concedes that its expert report provides insufficient ground on which to grant summary judgment in plaintiff's favor.  Plt.'s Reply Br., dkt. #71, at 7.  Therefore, plaintiff's sole argument is that defendants' negligence is "obvious" because the way they drafted plaintiff's contracts violated a federal regulation.

Plaintiff's argument is essentially that negligence per se should apply in this case because defendants violated the regulations set forth by the Office of Thrift Supervision, which imposes the following requirement: "[e]ach employment contract shall provide that . . . The officer or employee shall have no right to receive compensation or other benefits for any period after termination for cause."  12 C.F.R. § 563.39(b)(1).  Neither of the contracts prepared by defendants contained a termination for cause provision that would have prevented Cooley from receiving retirement benefits after his termination for cause.  Plaintiff says that because the contracts drafted by defendants do not follow the requirements of 12 C.F.R. § 563.39(b)(1), defendants' negligence is "obvious."  Even if defendants' disregard for this regulation appears irresponsible and harmful, plaintiff has skipped several important steps in declaring that negligence is a forgone conclusion.

"The violation of a statute or an ordinance does not automatically impose civil liability."  Holt v. Hegwood, 2005 WI App 257, ¶ 13-14, 287 Wis. 2d 853, 864-65, 708 N.W.2d 21, 26-27 (footnote omitted).  Rather, plaintiff must prove that "(1) the harm inflicted was the type the statute was designed to prevent; (2) the person injured was within the class of persons sought to be protected; and (3) there is some expression of legislative intent that the statute become a basis for the imposition of civil liability."  Id. (quoting

17

Antwaun A. ex rel. Muwonge v. Heritage Mutual Insurance Co., 228 Wis. 2d 44, 67, 596 N.W.2d 456, 466 (1999)).  Plaintiff has not discussed these elements and has made no showing that the regulation or parties meet these requirements.

Moreover, "[a] statute that merely makes provision for the safety or welfare of the public generally, but does not purport to establish civil liability, is not to be construed to establish civil liability."  Id.  Instead, it is the plaintiff's burden to show through statutory language, legislative history or otherwise, that the statute is meant to impose liability on parties such as defendants.  Id.  See also Antwaun A. ex rel. Muwonge, 228 Wis. 2d at 67, 596 N.W.2d at 466 ("This court has repeatedly indicated that a statute will not be interpreted to impose a greater duty than that imposed by the common law unless it 'clearly and beyond any reasonable doubt expresses such purpose by language that is clear, unambiguous, and peremptory.'" (quoting Delaney v. Supreme Investment Co., 251 Wis. 374, 380, 29 N.W.2d 754 (1947) (citations omitted))).  Plaintiff has failed to make this showing.

For the purposes of its motion for summary judgment, plaintiff has failed to show that defendants were negligent per se and it has made no other argument for finding defendants negligent.  Therefore, I will deny summary judgment on this aspect of the case.

D.  Defendant Martin L. Meyrowitz, P.C.

Defendants have moved to dismiss defendant Martin L. Meyrowitz, P.C. from this lawsuit on the ground that it took no part in the facts underlying the case.  Aside from

18

alleging that Meyrowitz solicited business from plaintiff in 2009, plaintiff has not discussed this defendant or disputed defendants' argument.  "A failure to oppose an argument permits an inference of acquiescence and 'acquiescence operates as a waiver.'"  Wojtas v.Capital Guardian Trust Co., 477 F.3d 924, 926 (7th Cir. 2007) (quoting Cincinnati Insurance Co. v. East Atlantic Insurance Co., 260 F.3d 742, 747 (7th Cir. 2001)).  As a result, plaintiff has waived any argument against dismissing defendant Martin L. Meyrowitz, P.C., and I will dismiss this defendant.


ORDER

IT IS ORDERED that the motion for summary judgment, dkt #36, filed by defendants Silver, Freedman & Taff, L.L.P.; Barry P. Taff, P.C.; Martin L. Meyrowitz, P.C.; and Nancy M. Stiles, P.C. is GRANTED with respect to defendants' motion to dismiss Martin L. Meyrowitz, P.C. and DENIED in all other respects.  Plaintiff Citizen Community Federal's motion for summary judgment, dkt. #44, is GRANTED IN PART as to defendants' obligation to meet the standard of care for "specialists" for the legal malpractice claim.  The motion is DENIED in all other respects.

Entered this 30th day of January, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

19