IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CITIZENS COMMUNITY FEDERAL,

                                                                                  MEMORANDUM

                Plaintiff,

                                                               12-cv-648-bbc

     v.

SILVER, FREEDMAN & TAFF, L.L.P.,
BARRY P. TAFF, P.C. and NANCY M. STILES, P.C.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       In this civil action, plaintiff Citizens Community Federal contends that defendants Silver, Freedman & Taff, L.L.P.; Barry P. Taff, P.C.; and Nancy M. Stiles, P.C. committed legal malpractice and breached their fiduciary duties when they drafted contracts to govern the relationship between plaintiff and its then-CEO James Cooley. In anticipation of their upcoming trial, the parties have requested two different jury instructions on the issue of a federal regulation promulgated by the Office of Thrift Supervision, 12 C.F.R. § 563.39. In an order dated April 8, 2014, I instructed the parties to explain why instructions on the regulation would be relevant to this case and I told plaintiff that if it believed that the regulation was relevant to a claim of negligence per se, it should explain whether and how the federal regulation met the elements of such a claim in this case. Dkt. #129. Both sides filed timely responses to the order.

       Plaintiff argues that it is not attempting to establish negligence per se, so it need not

1

address the elements of that claim and show whether the statute or regulation creates an independent basis for liability and whether plaintiff is within the class of persons the statute or regulation was intended to protect. Antwaun A. ex rel. Muwonge v. Heritage Mutual Insurance Co., 228 Wis. 2d 44, 67, 596 N.W.2d 456, 466 (1999). Instead, plaintiff wishes to use 12 C.F.R. § 563.39 in its negligence claim against defendants, as evidence of the appropriate standard of care. Cooper v. Eagle River Memorial Hospital, Inc., 270 F.3d 456, 462 (7th Cir. 2001) (interpreting Wisconsin law and holding that although it was proper for district court to refuse to instruct jury on negligence per se, plaintiff was not "prohibited from introducing evidence of the Wisconsin administrative code provisions to help inform the jury's negligence assessment"). Plaintiff argues that using the regulation for this purpose requires only a showing that the regulation is relevant to its case under Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

Defendants deny that 12 C.F.R. § 563.39 can be used in this manner because (1) plaintiff has no evidence that the defendant lawyers relied on this regulation or intended to draft the contracts in accord with it; (2) the mere fact that a lawyer took an action contrary to the law does not establish negligence; and (3) the regulation does not apply to this case. The first two arguments may be dismissed easily. First, a negligence claim does not require the plaintiff to show that defendants acted knowingly. The question is what defendants *should* have known or relied upon when drafting the contracts. In this case, it is reasonable

2

to assume that such knowledge may include an understanding of the relevance of the regulation to the type of contracts at issue. Second, by abandoning its claim of negligence per se, plaintiff has acknowledged that by itself, a violation of the regulation does not prove negligence, but it argues that the regulation can be used along with other evidence to show the standard of care. Plaintiff is correct. A single piece of evidence can be relevant even if it is insufficient to establish plaintiff's entire case. Thompson v. City of Chicago, 472 F.3d 444, 453 (7th Cir. 2006) ("To be relevant, evidence need not conclusively decide the ultimate issue in a case, nor make the proposition appear more probable, 'but it must in some degree advance the inquiry.'" (quoting E.E.O.C. v. Indiana Bell Telephone Co., 256 F.3d 516, 533 (7th Cir. 2001) (Flaum, C.J., concurring in part & dissenting in part)).

Defendants' third argument requires more discussion. Under 12 C.F.R. § 563.39, federal savings associations such as plaintiff are permitted to enter into employment contracts with their employees, but the contracts must contain certain provisions. As relevant to this case, 12 C.F.R. § 563.39(b)(1) provides that "[e]ach employment contract shall provide that . . . [t]he officer or employee shall have no right to receive compensation or other benefits for any period after termination for cause." Defendants argue that the provision means that employees should not receive benefits *earned after* termination, but may receive benefits *earned before* termination even if those benefits have *not vested* by the termination date. Thus, they say the regulation is irrelevant to this case because James Cooley's retirement benefits were *earned before* termination, so even if the contract had been drafted in accord with the regulation he still would have received his benefits.

Plaintiff reads the regulation as directing federal savings institutions to use contracts that prohibit terminated employees from receiving benefits *earned after* termination as well as those *earned before* termination, if those benefits have not *vested before* termination. Courts have determined that "vested" under 12 C.F.R. § 563.39(b) means "without condition precedent," Navarro v. F.D.I.C., 371 F.3d 979, 981 (7th Cir. 2004), or rights "entitled to immediate payment," Modzelewski v. Resolution Trust Corp., 14 F.3d 1374, 1378 (9th Cir. 1994). Because Cooley did not qualify for his retirement benefits until the later of either his termination or his reaching age 65 and he had not reached 65 when terminated, his rights to the benefits were not vested, but were still conditional when he was terminated. Thus, he would *not* have received the benefits had the contract been drafted in accordance with plaintiff's reading of the regulation. Id. ("Modzelewski hadn't yet earned the right to claim benefits. He was entitled to benefits when he attained the age of 65; when the RTC took over [and he was terminated], Modzelewski was only 53. His right to claim benefits was still subject to any number of substantial contingencies."). At the most, under this reading, Cooley would have received his pay for the last pay period in which he had worked, because his right to that money vested when the pay period ended.

The portion of the regulation quoted by defendants ("[t]he officer or employee shall have no right to receive compensation or other benefits for any period after termination for cause") does not make it clear whether it prohibits receipt of vested rights only; the terms "earned" and "vested" do not appear anywhere within it. Defendants provide no authority to support their view that it allows the employee to receive benefits earned before

4

termination that have not vested. (They also failed to raise this issue at summary judgment or in a motion in limine.) Plaintiff's reading is more persuasive, especially given the language of the entire regulation. The final sentence of the regulation states "Any rights of the parties that have already *vested*, however, shall not be affected by such action." 12 C.F.R. § 563.39(b)(1) (emphasis added).

Defendants argue that this last sentence applies only to "troubled" institutions whose management is taken over by the government and which are provided for specifically in the regulation. However, the sentence at issue is set apart from the provision related to "troubled" institutions, given no paragraph letter or number and pushed fully to the left margin rather than indented in the style of the other paragraphs:

> (b) Required provisions. Each employment contract shall provide that:
> (1) The association's board of directors may terminate the officer or employee's employment at any time . . .
> (2) If the officer or employee is suspended and/or temporarily prohibited . . .
> (3) If the officer or employee is removed and/or permanently prohibited from participating in the conduct of the association's affairs . . .
> (4) If the savings association is in default . . .
> (5) All obligations under the contract shall be terminated, except to the extent determined that continuation of the contract is necessary of the continued operation of the association
>    (i) By the Director or his or her designee, at the time the Federal Deposit Insurance Corporation or Resolution Trust Corporation enters into an agreement . . .
>    (ii) By the Director or his or her designee, at the time the Director or his or her designee approves a supervisory merger to resolve problems related to operation of the association . . . .
>
> Any rights of the parties that have already vested, however, shall not be affected by such action.

12 C.F.R. § 563.39. This formatting suggests the sentence was intended to apply to the entire regulation. But even if it was not, the sentence supports plaintiff's reading because

5

it shows that the drafters of the regulation attempted to protect vested benefits in at least some circumstances yet made no attempt to protect benefits earned but not yet vested in *any* circumstances. This suggests that the drafters' concern was with vested benefits and that plaintiff's reading is more plausible.

Plaintiff has made a sufficient showing that 12 C.F.R. § 563.39(b)(1) is relevant to its case and defendants have failed to make a persuasive argument to the contrary. Accordingly, I will allow the parties to present evidence on paragraph (b)(1) of the regulation for the purposes of establishing or challenging the standard of care. (The parties have not discussed any other provisions of the regulation, so any reliance on those provisions is forfeited.) However, because the parties are limited to using the regulation to argue the standard of care only, no separate jury instruction on the regulation will be necessary. Instead, I will add language instructing the jury on using a regulation as evidence for the purpose of determining whether defendants met the standard of care. The parties will have an opportunity to address the revised "standard of care" jury instruction at the instruction conference.

Entered this 18th day of April, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB

District Judge

6